UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| AGC, INC. and | : | Case No. 13-_____ |
| RAJON REALTY CORPORATION, | : | Case No. 13-_____ |
| | : | |
| Debtors. | : | |

MOTION FOR ENTRY OF FINANCING ORDERS
(I) AUTHORIZING DEBTORS-IN-POSSESSION
TO OBTAIN POST-PETITION FINANCING; (II) GRANTING LIENS,
SECURITY INTERESTS AND SUPERPRIORITY STATUS;
(III) AUTHORIZING USE OF CASH COLLATERAL;
(IV) GRANTING ADEQUATE PROTECTION; (V) MODIFYING THE
AUTOMATIC STAY; AND (VI) SCHEDULING A FINAL HEARING

The Debtors (referred to herein as "Debtor" and collectively as the "Debtors"), by their undersigned attorneys, hereby move this Court (the "DIP Financing Motion"), pursuant to sections 105, 362, 364(c)(1), (c)(2), and (d) of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an interim order (the "Interim Financing Order") and final order (the "Final Financing Order" and with the Interim Financing Order, the "Financing Orders") (i) authorizing the Debtors to incur post-petition indebtedness (the "Post-

Petition Financing") in accordance with a Loan and Security Agreement dated as of April 16, 2013 (the "DIP Agreement" a copy of which is attached hereto as Exhibit A; the DIP Agreement, together with the other documents used to create and implement the loan facility, collectively hereinafter, the "DIP Loan Documents"), with Harlow Aerostructures, LLC ("Harlow"), with administrative superpriority and secured by senior, priming liens in substantially all assets of the Debtors pursuant to section 364(c)(l), (c)(2), and (d) of the Bankruptcy Code; (ii) authorizing the Debtors to use cash collateral and granting adequate protection; and (iii) scheduling an interim and a final hearing. In support of the DIP Financing Motion, the Debtors respectfully represent:

## BACKGROUND

1. On April 16, 2013 (the "Petition Date"), the Debtors commenced these cases by filing separate voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtor AGC, Incorporated ("AGC") manufactures specialty parts for the aerospace industry; the Debtor Rajon Realty Corporation ("Rajon") owns the real property where AGC does business and leases the property to AGC. Rajon and AGC are subject to common ownership.

2. As of the Petition Date:

   (i) the Debtors were indebted to TD Bank, N.A. ("TD Bank") in the approximate aggregate principal amount of $5,461,277.00; such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees) and other amounts heretofore or hereafter accruing thereon is referred to herein as, the "TD Bank Debt";

(ii) the Debtors were indebted to the Connecticut Development Authority, which is now known as Connecticut Innovations, Incorporated ("CI" and together with TD Bank, the "Prepetition Secured Creditors") in the approximate aggregate principal amount of $721,566.00; such principal amount, together with all interest, fees, costs, expenses (including attorneys' fees) and other amounts heretofore or hereafter accruing thereon is referred to herein as, the "CI Debt");

Collectively, the TD Bank Debt and CI Debt shall be referred to herein as the "Prepetition Secured Debt."

3. The holders of the Prepetition Secured Debt claim the following security interests:

(i) TD Bank claims a lien in substantially all of the Debtors' real and personal property.

(ii) CI claims a lien, subsequent in right to TD Bank's lien, in substantially all of the Debtors' real and personal property.

4. In addition to the Prepetition Secured Creditors, the following entities may also claim a security interest in any of the Debtors' assets:

(i) Citibank, N.A. may claim a lien in certain accounts receivable from United Technologies Corp. purchased by Citibank, N.A. pursuant to the terms of the Supplier Agreement between Debtors and Citibank, N.A.

(ii) Town of Groton may claim a lien in certain property declared on the Town

of Groton's Grand List for October 1, 2009 and October 1, 2010.

   (iii) De Lage Landen Financial Services, Inc. may claim a lien in certain equipment described in Contract No. 25042455.

   (iv) City of Meriden claims a sewer lien on certain real property located at 106 Evansville Road, Meriden, Connecticut.

  5. The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

  6. No official committee of unsecured creditors has been appointed by the United States Trustee.

  7. No trustee or examiner has been appointed herein.

## JURISDICTION AND VENUE

  8. This Court has jurisdiction over this DIP Financing Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these proceedings and this DIP Financing Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and this division pursuant to D. Conn. LBR 1073-1. The statutory predicate for the relief sought herein is sections 105, 362, 364, 503, and 507 of the Bankruptcy Code and rules 2002, 4001 and 9014 of the Bankruptcy Rules.

## POST-PETITION FINANCING

9. The Debtors have an immediate need to enter into the Post-Petition Financing. The Debtors have an emergency need to obtain financing as proposed herein in order for them to timely meet their post-petition obligations, to preserve value, and to avoid immediate and irreparable harm.

## RELIEF REQUESTED

10. Under the proposed DIP Agreement, the Debtors will obtain from Harlow an extension of credit in the principal amount of $400,000. Each of the Debtors will be a primary obligor under the DIP Agreement.

11. The proceeds of the borrowings under the Post-Petition Financing will be used by the Debtors to pay the expenses of their operations, in accordance with an agreed upon budget (the "Budget") included in the DIP Loan Documents, which Budget is annexed hereto as Exhibit C.

12. Harlow has entered into an Asset Purchase Agreement ("APA") with the Debtors, as the "stalking horse bidder" for virtually all of the Debtors' assets. The Debtors are simultaneously submitting to the Court their motion to approve bidding procedures, which will set in motion an anticipated bidding process for the Debtors' assets (the "Asset Sale"). The first

$100,000.00 advanced to the Debtors under the Post-Petition Financing shall be deemed to constitute the Good Faith Deposit under the APA.  If the Debtors are authorized to retain the Good Faith Deposit under the terms of the APA, then the Debtors shall not be required to repay the Good Faith Deposit or any interest thereon.

13. Pursuant to the terms of the DIP Agreement, the Debtors have agreed, subject to Court approval, to secure their obligations to the Lender under the DIP Agreement by granting senior, priming security interests in, and liens on, the Debtors' Collateral, as defined below. A copy of the proposed Interim Financing Order is attached hereto as Exhibit B.

14. All obligations and commitments of Harlow under the Financing Orders, and the Debtors' authorization to borrow funds under the DIP Agreement, may terminate under the following conditions: (i) the last day of the Term (as defined in the DIP Agreement); (ii) the Termination Date (as defined in the DIP Agreement); (iii) an Event of Default under the DIP Agreement; (iv) the filing of an adversary proceeding or contested matter by the Debtors (other than one to challenge the existence of any such termination event), any committee or other party-in-interest against Harlow; and (v) any violations of either of the Financing Orders.

## GRANTING OF ADDITIONAL LIENS

15. The Debtors' obligations under the Post-Petition Financing will be secured by (a)

priming liens, as defined in the Bankruptcy Code, (the "Liens") pursuant to section 364(d) of the Bankruptcy Code on, and security interests in, all of the Collateral.[1]

16. Any term not defined herein shall have the meaning ascribed to it in the DIP Agreement and the Interim and Final Financing Orders.

17. The Debtors shall grant to the Lenders:

(a) Pursuant to Section 364(c)(1) of the Bankruptcy Code, perfected first priority, senior secured interests in and liens upon all DIP Loan Collateral with a priority over any and all administrative expenses of the kind specified in sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 503(c), 507(a) 546(c), 726 and/or 1114 of the Code;

(b) Pursuant to Section 364(c)(2) of the Bankruptcy Code, perfected first priority, senior security interests in and liens upon all DIP Loan Collateral not currently subject to any lien; and

(c) Pursuant to Section 364(d)(1) of the Bankruptcy Code, a priming, perfected first priority secured interest in and liens upon all DIP Loan Collateral.

18. To the extent that any holder of Prepetition Secured Debt has not specifically

---

[1] The term "Collateral" shall have the definition ascribed thereto in the DIP Agreement and includes real estate, cash, accounts, accounts receivable, inventory, equipment, fixtures, general intangibles, documents, instruments, chattel paper, deposit accounts, letter-of-credit rights, commercial tort claims, investment property, and books and records relating to any assets and all proceeds (including insurance proceeds) of the foregoing, whether in existence on the Petition Date or thereafter created, acquired or arising and wherever located all as more fully described in the DIP Agreement, but excludes claims or causes of action under Chapter 5 of the Bankruptcy Code.

consented to the DIP Financing Motion, such Prepetition Secured Creditor is deemed to be adequately protected by virtue of the preservation of the Debtor's going-concern value, which is provided by the DIP facility.

### GRANTING OF SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS

19. As additional security for Harlow, its claims under the Post-Petition Financing shall have priority over all administrative expenses of the kind specified in section 503(b) or 507(b) of the Bankruptcy Code (such priority, the "<u>Superpriority Administrative Expense Claim</u>").

### PROVISIONS OF THE PROPOSED DIP LOAN FACILITY

20. The Debtors and Harlow engaged in good faith and arm's length negotiations that culminated in the agreement to provide the Debtors with the Post-Petition Financing, in the form of a credit facility in the principal amount of $400,000, on the terms and subject to the conditions set forth in the DIP Agreement.

21. The provisions included in the proposed Post-Petition Financing include, but are not limited to the following:

    (a)    Borrowers:  Rajon Realty Corporation and AGC, Inc.

    (b)    Amount:  $400,000.00.

    (c)    Interest Rate:  7% per annum.

    (d)    Default Rate:  5% above the non-default interest rate.

    (e)    Loan Fee: $10,000.00.

    (f)    Term:  The term of the loan shall expire on May 25, 2013.

    (g)    Use of Proceeds:  In accordance with terms of Budget annexed to DIP Agreement and hereto as Exhibit C.

## THE PROPOSED FINANCING REPRESENTS THE BEST FINANCING AVAILABLE TO THE DEBTORS UNDER THE CIRCUMSTANCES

22.    The Debtors are entirely unable to obtain any other post-petition financing, and have been told by their prepetition lender, TD Bank, that it would no longer provide financial support to the Debtors.  The Debtors are simply "out of cash" with which to operate their businesses. As a result, Harlow is the only viable source of DIP financing. Harlow has presented to the Debtors the only available financing package, which includes a favorable price, commitment amount, and other factors. The proposed Post-Petition Financing is the only facility that can provide the Debtors with the timely ability to meet their various and urgent financing needs within the Debtors' time constraints. As negotiated, the Post-Petition Financing will enable the Debtors to compensate their 110 hourly and salaried employees, pay their post-petition creditors and vendors, operate their businesses, and maximize the value of their

businesses and properties. The Debtors ability to realize the maximum value for their assets is dependant upon their ability to obtain the postpetition credit sought herein, and the Post-Petition Financing is the best — and only — viable alternative available to them.

23.     The Debtors negotiated the terms of the Post-Petition Financing and the DIP Agreement with Harlow at arm's length and in good faith (as defined in section 364(e) of the Bankruptcy Code), with all parties represented by experienced counsel. The Debtors believe that the negotiated terms are fair and reasonable under the circumstances of these cases.

## RELIEF REQUESTED

24.     By this DIP Financing Motion, the Debtors seek entry of Interim and Final Orders, pursuant to sections 105(a), 363, 364(c)(1), (c)(2), (c)(3) and (d) of the Bankruptcy Code and rules 2002, 4001, and 9014 of the Bankruptcy Rules:

(a)     (authorizing the Debtors to obtain secured post-petition financing, on an interim and final basis, pursuant to section 364 of the Bankruptcy Code, in the amount of $400,000;

(b)     granting the Lender on an interim and final basis, pursuant to section 364(c)(1), (c)(2) and (d) of the Bankruptcy Code, superpriority Claim status over any and all administrative expenses of the kinds specified in sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 507(a), 507(b), 546(c) 726 or 1114 of the Bankruptcy Code;

(c)     finding that the Prepetition Lenders will have adequate protection

        pursuant to section 363(a) of the Bankruptcy Code by virtue of the preservation or the value of the Debtors' assets;

(d)        granting Harlow liens to secure the Debtors' obligations under the DIP Agreement and the Interim Financing Order that are entitled to the protections of the Bankruptcy Code section 364(e) such that notwithstanding any modification, amendment, stay or vacation of any provision of the Interim Financing Order, the Lender shall be entitled to all rights, remedies, privileges and benefits, including liens, security interests and priorities granted therein and pursuant to the DIP Loan Documents, with respect to any such indebtedness, obligation or liability;

(e)        modifying the automatic stay to permit Harlow in its sole discretion, (i) to file financing statements, mortgages, deeds of trust, or other similar documents to evidence its security interests under the Post-Petition Financing and under the Interim and Final Orders, (ii) subject to certain notice requirements, to execute upon such security interests or exercise other remedies under the DIP Loan Documents following an Event of Default under, or other termination of, the Post-Petition Financing, and (iii) to take other actions required by the DIP Loan Documents;

(f)        scheduling the Interim Hearing on this DIP Financing Motion to consider entry of an Interim Order approving the DIP Agreement, as set forth in this DIP Financing Motion and other related DIP Loan Documents filed with or presented to this Court;

(g)        scheduling the Final Hearing on this DIP Financing Motion to consider the entry of the Final Order approving the DIP Agreement, as set forth in this DIP Financing Motion and other related DIP Loan Documents filed with or presented to this Court.

### BASIS FOR RELIEF REQUESTED

25.        It is essential to the success of these Chapter 11 cases that the Debtors

immediately obtain access to the Post-Petition Financing to allow them to continue to operate their businesses and generate income. Absent access to the Post-Petition Financing on an interim and final basis, the Debtors will be unable to purchase goods and services, pay their 110 hourly and salaried employees and their ordinary course operating expenses. Without the proposed relief the Debtors will be unable to preserve their value as a going concern. The Debtors' continued ability to recognize going concern value of their businesses depends heavily upon the timely approval of the Post-Petition Financing and the related relief requested herein.

26. Section 364 of the Bankruptcy Code provides in part that if a debtor- in-possession cannot obtain credit by resorting to the protections available under 364(c), the court may authorize the debtor to grant a lender a first-priority priming lien in encumbered assets of the debtor pursuant to Bankruptcy Code section 364(d)(1).  In this instance, the only secured creditor with any expectation of an equity interest in the Collateral is TD Bank, and that bank has consented to this request.

## THE POST-PETITION FINANCING SHOULD BE APPROVED UNDER SECTION 364 OF THE BANKRUPTCY CODE

27. Given the Debtors' situation, they moved quickly and in a targeted manner to ensure that they would be able to negotiate a new financing facility. There is no reason to believe that they could have located a different post-petition lender offering terms more

favorable than the Lender, and certainly not before the Debtors' limited cash collateral resources were depleted. The Debtors management took the steps they deemed necessary and exercised their reasonable business judgment in negotiating the Post-Petition Financing.

## THE POST-PETITION FINANCING IS NECESSARY TO PRESERVE THE ASSETS OF THE DEBTORS' ESTATES

28. The Debtors need for immediate access to the funding provided by the proposed DIP Agreement is apparent. Without the proposed Post-Petition Financing, the Debtors will not have sufficient funds to operate.

## THE DEBTORS REQUEST FOR INTERIM RELIEF IS APPROPRIATE

29. As set forth earlier herein, the Debtors require the immediate financing for, among other things, the purchase of new supplies, raw materials, employee wages, insurance obligations, and the operation of their businesses. The Debtors' interim request represents the minimum amount necessary to operate until this Court can rule on the Debtors' request at the Final Hearing. A copy of the Debtors' budget is attached hereto as <u>Exhibit C</u>. It is essential that the Debtors' continue to pay their ordinary operating expenses in order to minimize the damage occasioned by their current cash flow problems, maximize the value of their assets.

30. Absent immediate financing for their continuing business operations, the Debtors will be unable to pay for operating expenses on an ongoing basis. If the interim relief sought is

not granted, the Debtors attempt to maximize the value of their assets will be placed in serious jeopardy and may result in irreparable harm to the Debtors, their estates, their creditors, and other parties in interest.

31. Accordingly, the Debtors request that pending the Final Hearing, the Court schedule an Interim Hearing as soon as practicable to consider the Debtors' request for authorization to obtain the Post-Petition Financing in accordance with and pursuant to the terms and conditions contained in the DIP Agreement and the Interim Financing Order.

32. For the reasons, stated herein, the Debtors respectfully request that the Court grant the relief requested herein

## NOTICE

33. The notice to be given by the Debtors of the Interim Hearing will be in accordance with Bankruptcy Rules 2002 and 4001, and the local rules of this Court. Under the circumstances, no further notice of the request for relief to be granted at the Interim Hearing should be required. Promptly after the entry of an Interim Financing Order, Debtors shall cause to be served, by first class mail or electronic mail (including the Court's electronic filing system), a copy of the Interim Order entered herein and a notice of the Final Hearing (the "Final Hearing Notice"), to all parties entitled to notice thereof under the Bankruptcy Rules and

the local rules of this Court, and shall file a certificate of service regarding the same with the Clerk of the Court. In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

## NO PRIOR REQUEST

34. No prior request for the relief sought in the DIP Financing Motion has been made to this or any other court in connection with these Chapter 11 cases.

## RIGHT TO CREDIT BID

35. Harlow reserves the right to credit bid the full amount of the Post-Petition Financing and/or to apply the Post-Petition Financing against the purchase price paid by Harlow pursuant to its Asset Purchase Agreement or in the course of any bidding at an auction for the sale of the Debtors' assets.

**WHEREFORE,** the Debtors respectfully request that the Court(a) enter an interim order substantially in the form annexed hereto, and a final order in substantially the same form as the Interim Order, (i) authorizing the Debtors to incur post-petition indebtedness on a secured basis and with administrative superiority, (ii) granting security interests, liens, (including priming and replacement liens), and superpriority claims, (iii) modifying the automatic stay to allow certain actions with respect to the Debtors' post-petition indebtedness, and (iv) granting such other and

further relief as the Court may deem just and proper.

Dated at Hartford, Connecticut, this 16th day of April, 2013.

                                  By: /s/Kathleen M. LaManna
                                      Kathleen M. LaManna (ct 16740)
                                      Eric S. Goldstein (ct 27195)
                                      Shipman & Goodwin LLP
                                      One Constitution Plaza
                                      Hartford, CT  06103-1919
                                      Tel. (860) 251-5000
                                      Fax: (860) 251-5218
                                      klamanna@goodwin.com
                                      egoldstein@goodwin.com

                                      *Proposed Counsel for AGC, Inc. and*
                                      *Rajon Realty Corporation*